UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYREE DAVIS, Plaintiff, | : | |
| v. | : | 3:26cv929 (KAD) |
| JESUS GUADARRAMA, et al., Defendants. | : | |

**INITIAL REVIEW ORDER**

The self-represented plaintiff, Tyree Davis, is a Connecticut-sentenced inmate who is currently housed at Garner Correctional Institution ("Garner").[1] In this civil rights complaint under 42 U.S.C. § 1983, Plaintiff seeks damages for violations of his rights under the United States Constitution against six Connecticut Department of Correction ("DOC") employees who work at MacDougall-Walker Correctional Institution ("MWCI"): Warden Jesus Guadarrama, Correction Officer Antwan Lambert, Captain John Doe ("Captain Doe 1"), Correction Counselor John Doe ("Correction Counselor Doe 2"), Deputy Warden Jane, and Lieutenant John Doe ("Lieutenant Doe 3"). Am. Compl., ECF No. 13.[2] The Court construes Plaintiff's amended complaint to sue Defendants in their individual capacities.[3]

[1] The Court takes judicial notice of information on the Connecticut Department of Correction ("DOC") website that reflects Plaintiff was sentenced on April 6, 2021. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=296020. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

[2] Plaintiff commenced this action June 10, 2026. Compl., ECF No. 1. He filed the operative amended complaint on July 16, 2026. Am. Compl., ECF No. 13. The parties, allegations, and prayer for relief are identical in the two Complaints, although the Amended Complaint includes additional attachments.

[3] Plaintiff cannot assert claims for damages under section 1983 against Defendants in their official capacities. Defendants are all state employees and, therefore, such claims are barred by the Eleventh Amendment. *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

## I. ALLEGATIONS

The Court summarizes the allegations of Plaintiff's amended complaint, which it takes to be true for purposes of this review.

On July 15, 2025, Plaintiff was transferred from Garner to MWCI to complete Phase 2 and 3 of the Administrative Segregation Program. Am. Compl. ¶ 1. On that same day, Correction Counselor Doe 2 advised Plaintiff that he was being placed back into Phase 1 and would go to recreation with Phase 1 inmates. *Id.* ¶ 2. Plaintiff asked Counselor Doe 2 if he had received any paperwork authorizing the regression to Phase 1. *Id.* ¶ 3. Doe 2 explained that the facility had not received the regression authorization document from Garner, but Plaintiff would be provided with a copy when it was received. *Id.* ¶ 4. Plaintiff queried how he could be regressed to Phase 1 without a "supporting" document, but Doe 2 walked away without answering the question. *Id.* ¶ 5.

Later that day, Plaintiff was assured by Deputy Warden Jane Doe and Captain Doe 1 that he would receive a copy of the document authorizing his regression to Phase 1. *Id.* ¶¶ 7–8.

Plaintiff also wrote to Warden Guadarrama but never received a response. *Id.* ¶ 8.

On July 17, 2025, Correction Counselor Doe 2 advised Plaintiff that he would have his recreation with other inmates in Phase 1. *Id.* ¶ 9. After Plaintiff again inquired about the authorizing document for his regression, Correction Counselor Doe 2 advised that it was on the way but had been delayed in the mail system. *Id.* ¶ 10.

Plaintiff explained to Correction Counselor Doe 2 that he did not want to go into the Phase 1 group and that he was concerned about being assaulted by two inmates who had previously "jumped" two other inmates. *Id.* ¶¶ 11-12, 16. Correction Counselor Doe 2 responded that there was nothing he could do after Captain Doe 1 issued an instruction for Plaintiff to change groups. *Id.* ¶ 13. Plaintiff again expressed his safety concerns, but Correction Counselor Doe 2 replied that he did not know what to tell him and walked away. *Id.* ¶ 14.

At 5:00 PM—soon after being placed in the recreation yard—Plaintiff was assaulted by the same two inmates whom he had identified to Correction Counselor Doe 2 as exposing him to a risk of assault. *Id.* ¶ 16. Plaintiff was taken to a hospital because he had been cut with a weapon. *Id.* ¶ 17.

Between July 15 and July 17, 2025, Plaintiff voiced his concerns about being assaulted to all Defendants, but no remedial action was taken. *Id.* ¶ 15. Plaintiff alleges that all Defendants were aware of the two inmates' violence against other inmates a few months earlier and should have separated them. *Id.* ¶ 26. Plaintiff notes that the same inmates also assaulted two other inmates after his assault. *Id.* ¶ 27.

Plaintiff later discovered that Officer Ovalles contacted Lieutenant Doe 3 because he was concerned about placing Plaintiff in the recreation yard with the Administrative Segregation Phase 1 inmates. *Id.* ¶ 28. Lieutenant Doe 3 allegedly advised Officer Ovalles to talk to Officer Lambert

because Lieutenant Doe 3 was not working on the first shift when the decision was made to change Plaintiff's recreation group. *Id.* ¶ 29. Nonetheless, Officer Lambert placed him in the recreation yard with the Phase 1 Administrative Segregation inmates.

Plaintiff remained on Administrative Segregation Phase 1 until August 5, 2025. *Id.* ¶ 18 Because no document authorizing Plaintiff's regression was received at MWCI, Plaintiff was placed back onto Administrative Segregation Phase 2. *Id.* ¶ 18.

Warden Guadarrama denied Plaintiff's Level 1 Grievance—filed on August 7, 2025—that complained about his assignment to Phase 1 recreation without any document authorizing his regression to Administrative Segregation Phase 1 status. *Id.* ¶ 19; *see id.* pp. 32–33. Warden Guadarrama stated that Plaintiff was on "A.S. Phase 1" when "transferring back from Garner CI" and that his recreation group placement "was in guidelines with [his] A.S. Phase 1 status." *Id.* p. 32. Plaintiff then filed a Level 2 Grievance Appeal on September 12, 2025. *Id.* ¶ 20. Plaintiff's Grievance Appeal was upheld in part for the stated reason that his Phase 1 housing and recreation placements were appropriate, although he was "progressed to Phase 2" on August 5, 2025, as "a CN9411, Administrative Segregation Phase Program Progression/Regression was not generated." *Id.* ¶ 21; *id.* p. 34.

On September 11, 2025, Plaintiff was sent back to Garner to complete Phase 3 of the Administrative Segregation Program. *Id.* ¶ 22. At Garner, he wrote to Unit Counselor Arnold to ask about why he was sent to MWCI, and on what phase of Administrative Segregation was he transferred to MWCI. *Id.* ¶ 23. Counselor Arnold responded that he was still on Phase 2 when he was transferred to MWCI. *Id.* ¶ 24.

On October 8, 2025, Plaintiff wrote to ask the Unit Manager about the regression authorization document for his placement at MWCI. *Id.* ¶ 25. The Unit Manager replied that he had not submitted a regression form for Plaintiff. *Id.*

## II. DISCUSSION

The Court construes the amended complaint as seeking damages for violations of the Eighth Amendment and Fourteenth Amendment Procedural Due Process Clause. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir.1997) (citation omitted). The Court thus considers whether Plaintiff has alleged any plausible constitutional violations.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020); *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

**Eighth Amendment Deliberate Indifference to Health and Safety**

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). "[P]rison officials

have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted); *see also Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (holding that prison officials must "take reasonable measures to guarantee the safety of the inmates.") (quoting *Farmer*, 511 U.S. at 833) (internal quotation marks omitted).

But not every injury inflicted upon one inmate by another yields constitutional liability on the part of prison officials. *Farmer*, 511 U.S. at 834. Rather, a prison official violates a prisoner's Eighth Amendment protection against cruel and unusual punishment only when two requirements are met. *Id.* First, the plaintiff must prove that the deprivation was "objectively, sufficiently serious." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the claim is based on the defendants' failure to prevent harm, the plaintiff must prove that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*

Second, the plaintiff must prove that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 842–43 (quoting *Wilson*, 501 U.S. at 302–03). The defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. "[M]ere negligen[t]" conduct is insufficient. *Id.* at 835.

Relevant to this case, Plaintiff must allege that a Defendant knew of and disregarded a serious risk of harm to his health and wellbeing and that the Defendant had actual knowledge of a "longstanding, pervasive, well-documented, or expressly noted substantial risk of inmate attacks." *Farmer*, 511 U.S. at 842–43. This element may be satisfied where a prisoner alleges "he informed correctional officials about a specific fear of assault prior to being assaulted," so long as the

"information provided to correctional officials [is] . . . sufficiently detailed so as to establish that the correctional officials were sufficiently aware of the risk of harm at issue." *Jones v. Hood, No.* 3:25-CV-01607 (VAB), 2026 WL 1283046, at *4 (D. Conn. May 11, 2026) (citation omitted).

For purposes of initial review, Plaintiff's allegations are sufficient to support Eighth Amendment claims against Captain Doe 1, Correction Counselor Doe 2, Lieutenant Doe 3, Officer Lambert, and Deputy Warden Jane Doe for their deliberate indifference to Plaintiff's substantial risk of harm from the two inmates in the Phase 1 recreation group. Plaintiff alleges that he expressed specific concerns to Defendants about being assaulted by these inmates; Defendants were aware that these inmates had previously assaulted multiple other inmates; Plaintiff was nevertheless placed in the recreation group with them, and as predicted, Plaintiff was assaulted by these same inmates.

However, Plaintiff has not alleged facts to suggest that Warden Guadarrama acted with deliberate indifference to his risk of being assaulted as a result of the Administrative Segregation Phase 1 recreation group placement.[4] Although he allegedly sent Warden Guadarrama a grievance that received no response, "[t]he fact that a prisoner sent a letter or written request to a supervisory official does not establish the requisite personal involvement of the supervisory official." *Young v. Choinski*, 15 F. Supp. 3d 172, 189 (D. Conn. 2014). Receipt alone of grievances or letters generally "does not amount to personal involvement." *Brown v. Laino*, No. 24-CV-06677, 2025 WL 3228035, at *9 (S.D.N.Y. Nov. 19, 2025) (citation and internal quotation marks omitted); *see*

[4] Although in many instances, Plaintiff's allegations do not distinguish between defendants and merely refers to "all defendants," this form of pleading is generally not permitted. See *Atuahene v. City of Hartford*, 10 Fed. Appx.33 (2d Cir. 2001). Plaintiff provides specific allegations as to the various defendants and the Court has therefore assessed the Complaint in light of those specific allegations. Absent similar allegations as to Warden Guadarrama, Plaintiff's blanket reference to "all defendants" will not satisfy his pleading obligations as to Warden Guadarrama.

*also Dorlette v. City of Stamford*, No. 23-CV-1589, 2025 WL 2076036, at *2 (D. Conn. July 23, 2025) (concluding a defendant's failure to respond to plaintiff's complaint was insufficient to show personal involvement) (citing cases).

Nor does Plaintiff's allegation that Warden Guadarrama denied his grievance that complained about past staff conduct support an inference that the Warden had any direct involvement in deliberate indifference to Plaintiff's health and safety. A supervisory official's failure to provide a remedy for a violation of an inmate's constitutional rights that occurred in the past does not suggest that the supervisor had any direct involvement in the constitutional violation. *See Crenshaw v. Dep't of Corr.*, No. 3:24CV439, 2024 WL 3638242, at *8 (D. Conn. Aug. 1, 2024) (concluding "allegations of supervisory nurse Sanchez's denial of a grievance concerning past conduct of her subordinate are not sufficient to support an inference that she was personally involved in deliberate indifference to his mental health needs."); *Parker v. New York,* 2022 WL 2441215, at *4 (E.D.N.Y. July 1, 2022) (supervisor's failure to provide remedy for violation complained of in grievance was not sufficient to establish supervisor's liability).

Accordingly, Plaintiff's Eighth Amendment claim against Warden Guadarrama is dismissed as not plausible. He may, however, proceed on his Eighth Amendment deliberate indifference to his health and safety claims against Captain Doe 1, Correction Counselor Doe 2, Lieutenant Doe 3, Officer Lambert, and Deputy Warden Jane Doe in their individual capacities.

**Fourteenth Amendment Procedural Due Process**

The Court also considers whether Plaintiff has raised a plausible claim of Fourteenth Amendment procedural due process on the basis of his allegedly undocumented regression to Phase 1 of the Administrative Segregation Program.

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). A procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). Thus, Plaintiff must allege facts showing that he had a protected liberty interest in not being regressed to Phase 1 of the Administrative Segregation Program and that the Defendants deprived him of that interest without affording him due process. *See Robinson v. Quiros*, No. 22-CV-1471 (MPS), 2023 WL 7300563, at *6 (D. Conn. Nov. 6, 2023) (citing *Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013)).

Generally, prisoner classifications do not implicate a liberty interest so as to trigger due process protections. *See Torres v. Howell*, No. 03-CV-2227 (MRK), 2006 WL 1525942, at **15–16 (D. Conn. May 30, 2006) (collecting cases). But prisoners have a liberty interest in being free from a "restraint which . . . imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). The Court considers "[b]oth the conditions of confinement and their duration . . . harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citation omitted). Moreover, "[w]hether the conditions of . . . confinement constitute an atypical and significant hardship requires that they be considered in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective

confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Welch* v. *Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999).

Even crediting Plaintiff's allegations as true, the Plaintiff has not plausibly alleged that his regression to the Administrative Segregation Program's Phase 1 exposed him to an atypical and significant hardship. *See, e.g.*, *Wilkinson*, 545 U.S. at 223–24 (holding that prisoners had a "liberty interest in avoiding assignment" to a particular maximum-security facility because that assignment would "impose an atypical and significant hardship"). Plaintiff offers no allegations as to the nature, duration and conditions of Phase I (as opposed to those of Phase II) which would demonstrate a liberty interest in avoiding Phase I (or remaining in Phase II). Accordingly, this claim is DISMISSED without prejudice. If Plaintiff wishes to pursue this claim, he may file an Amended Complaint with sufficient factual allegations to address this deficiency. To be clear, while the events leading up to the assault occurred while he was regressed to Phase I, those events do not support a finding that Phase I, in and of itself, imposed an "atypical and significant hardship" on Plaintiff.

## III. ORDERS

The Court enters the following orders:

(1) The case shall proceed on Plaintiff's Eighth Amendment deliberate indifference to his health and safety claims against Captain Doe 1, Correction Counselor Doe 2, Lieutenant Doe 3, Officer Antwan Lambert, and Deputy Warden Jane Doe in their individual capacities. The Clerk of the Court is directed to TERMINATE Defendant Guadarrama.

To the extent that Plaintiff intended to bring claims against Defendants in their official capacities, all such claims are DISMISSED.

Plaintiff's Fourteenth Amendment procedural due process claim is DISMISSED without prejudice.

If Plaintiff wishes to correct the deficiencies of his claims as identified in this initial review order, Plaintiff may file a second amended complaint within **thirty-five (35) days** of this ruling's filing date. Plaintiff is advised that the Court will not incorporate any allegations of his prior complaint or amended complaint into any second amended complaint, and any second amended complaint will replace his prior complaint. Plaintiff must also name all defendants against whom he asserts claims in the case caption of his second amended complaint.

(2) The Court instructs the Clerk to verify the current work address for Correction Officer Antwan Lambert with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint [ECF No. 13] to him at his confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If the Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on the Defendant, and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk cannot effect service on any Doe Defendant without that Defendant's full name and current work address. Thus, Plaintiff is directed to obtain this information for the Doe Defendants during discovery and to file a notice containing the information with the Court. Once a Doe Defendant has been identified, the Court will order that he or she be served with a copy of the complaint in their individuals. Failure to identify a Doe Defendant by the conclusion of discovery will result in the dismissal of all claims against that defendant.

(4) The clerk shall mail a courtesy copy of complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendant shall file his response to the complaint, either an answer or motion to dismiss within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendant chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. Defendant may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **March 17, 2027.** Discovery requests and responses shall not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **May 17, 2026**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d) provides that he MUST notify the Court. **Failure to do so may result in the dismissal of the case.** Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than

one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or Defendants' counsel of his new address.

**SO ORDERED** this _17th_ day of _September__ 2026, at Bridgeport, Connecticut.

_*/s/ Kari A. Dooley*_________________
Kari A. Dooley
United States District Judge